Per Curiam.
This is an action on a promissory note, given by plaintiff in error to an eleesmosynary (educational) institution, to assist in'aid of the same, aud by it transferred at a heavy discount to the defendant in error herein, to cancel its obligation to him.
As to the leading points made in the case by plaintiff in error, we hold as follows :
First — As to the fact of incorpoi’ation.
It clearly appears that “The Southern Christian Institute” was claiming to act as an incorporated company under and by virtue of an act passed by the legislature of the state of Mississippi in March, 1875, and an amendatory act passed March 5, 1880.
The act provided that so soon as two hundred shares of fifty dollars each of stock should be subscribed for to the satisfaction of a majority of the commissioners named, that the subscribers should and were declared to be incorporated, etc. It is claimed on the part of the defense that there is no sufficient proof that the requisite amount of stock was subscribed.
It does appear that the requisite amount was subscribed, but it is not clear just when it was subscribed, but the company organized, elected officers, and proceeded to act as a corporation.
We think that sufficient to sustain the allegation of the petition.
*76 The burden of showing that the company was not incorporated, is upon the defendant by way of plea in abatement.
But the decisive point applicable to this case is, that the defendant having dealt with the corporation by giving the promissory note, cannot, when sued upon the paper, raise the question whether the corporation has a right to exist. It is the right of a sovereign power of the state under which the corporation claims to exist, to inquire by quo warranto into its right to exist or act as a corporation. See Beach on Corporations, section 13.
Second — It is said the corporation had no authority to take the note. We are unable to come to that conclusion.
The institute was a charitable one for the purpose of education of youth after the manner prescribed by a certain religious body. It was not for pecuniary profit. It speaks of stock, but that is only a form of membership of the body, and to carry out the purpose for which the institute was incorporated. The larger portion of the subscription to the so-called stock was for an endowment fund. The seventh section recognizes the right of the corporation to have means and funds, other than the amounts paid in on stock, and we do not doubt the right of the trustees to receive donations for the uses and purposes of their charitable organization, and that too, without any specific grant of power iu the act of incorporation ; and we do not understand that the Ohio decisions referred to, require us to hold differently.
The question discussed by the court in those cases, and to which we suppose counsel has reference, was that by force of the charter provision authorizing donations, the subscription was a valid and binding one, without any other consideration; but it is not held in those cases, as we understand them, that an eleemosynary organization of this kind cannot receive donations by promise, and, if expenditures are made upon the faith of the promised donations, cannot recover as upon a contract for the consideration.
*77 At common law, corporations had the right to acquire property within the scope of the purposes of the organizations. Such is still the law when not limited or prohibited by statute.
Third — In relation to liabilities created on the faith of the note.
We think, upon reading the evidence, that, the trustees of the institution proceeded to purchase land, erect or improve buildings, and to take steps as fast as they could in their financial condition, to put the school upon a good working basis, and to that end put an agent in the field to raise funds, etc. We think this is a fair shoeing that they were incurring these outlays on the faith of all gifts and promises and subscriptions, and that a sufficient considerrtion is shown to sustain the promises contained in the paper sued upon.
It should be borne in mind that this was a charitable educational institution, under control of the Disciple church, and was in fact a branch of the missionary operations of that church.
Fourth — As to the transfer of the note to Dr. Belding.
We have given this matter careful consideration, for it challenges attention.
The transfer was made by the trustees, evidently with full knowledge of the financial condition of the company, and for the purpose of cancelling its obligations. At common law, we do not doubt the right of the corporation to make the transfer. We are of the opinion that the court of common pleas could not in this action try the question whether or not the trustees were wasting the assets ; that should be heard in another tribunal having jurisdiction to inquire into the management of the trust.
It is said the decisions of the Mississippi courts are that corporations cannot make the transfer. The 41 Miss, cited, does not bear upon the questions raised here. The case in 35 Miss. p. 25, does bear upon the question. But we understand that decision to admit that at common law, the corpora *78 tion might transfer the paper. But the legislature of Mississippi had passed a law forbidding the transfer by that class of corporations of its notes. It was claimed that the act was in violation of the contract rights of the corporation under its charter, and the Mississippi court discussed the question whether the charter gave the power of transfer. Held, it did not, and, therefore, the act above mentioned did not violate the charter rights, and was, therefore, applicable to the case, and forbade the transfer.
W. H. Fuller, for plaintiff in error.
W. W. Touvelle, M. M. Boothman and H. H. Harris, for defendant in error.
It seems that the Supreme Court of the United States had, in another case from that state, held the above named act in contravention of the constitution of the United States, and void; and much time was spent by the Mississippi court in the discussion of the case to show that the case then before them was different from the case decided by the Supreme Court of the United States, and in stating that they would not follow the-decision of the Supreme Court of the United States.
We are of the opinion that the corporation had power to transfer this note and vest title in Dr. Belding.
We confess we are not greatly in favor of raising money through financial agents; it costs too much; but we do not doubt the power of the trustees to do so, and do not see how we can here interfere with that right. Debts having been created in the conduct of the business, they should be paid. It certainly does not appear yet that they were guilty of any violation of their trusts in the transfer made by the trustees.
Fifth — As to. the competency of the stockholders to testify. We do not doubt the right of the stockholders to testify.
Upon the whole examination of the record, we see no grounds for the reversal of the judgment of the common pleas. The judgment will, therefore, be affirmed at costs of the plaintiff in error.